**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | **NO.11-CR-10294-GAO** |
| **v.** | ) | |
| | ) | |
| **DAVID A. KEITH,** | ) | |
| **Defendant.** | ) | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS (LEAVE TO FILE DOCUMENT IN EXCESS OF 20 PAGES GRANTED ON JUNE 7, 2012)**

The United States of America, by and through undersigned counsel, submits this memorandum in support of its Opposition to Defendant's Motion to Suppress and supporting Memorandum (see docket entries # 22, 23). Defendant David Keith ("Keith" or "defendant") seeks to suppress evidence seized as a result of the search of his residence located at 1 Marshland Street, Haverhill, Massachusetts, on September 17, 2010, as well as statements made by him to law enforcement officers on that date during the execution of the search warrant.

In his motion to suppress, (hereinafter Def's Mot.), Keith alleges that the search of his residence conducted pursuant to a state search warrant violated his Fourth Amendment rights. Specifically, Keith alleges that the search warrant was a direct product of previous unconstitutional searches and seizures of the defendant's emails by America On Line ("AOL"), a private, non-governmental entity; the search warrant was a direct product of a previous unconstitutional search of an email attachment by the

National Center for Missing and Exploited Children ("NCMEC"), a private, non-governmental entity; the evidence was stale; reliance on the warrant was not objectively reasonable; and statements made by the defendant during and subsequent to the search were the product of an illegal search.

The defendant's arguments are without merit. First, neither AOL nor NCMEC are government agents. Therefore, the Fourth Amendment is not implicated. Second, the information contained in the affidavit in support of the search warrant was not stale. It is well-recognized that collectors of child pornography, retain their collections for long period of time. Thus, it is reasonable to believe that evidence of child pornography would be found in the defendant's home months after he possessed or distributed it. Further, there was ample probable cause outlined in the search warrant affidavit to support the issuance of the warrant. The police searched Keith's residence and seized the contraband pursuant to a validly issued state search warrant. Lastly, the statements made by the defendant during and subsequent to the execution of the search warrant were legally obtained. For these reasons, and those detailed herein, the defendant's motion to suppress evidence should be denied.

## I. BACKGROUND

On August 31, 2011, a three count indictment was returned charging David Keith with the following: Distribution of Child

Pornography, in violation of 18 United States Code section 2252(a)(2); Possession of Child Pornography, in violation of 18 United States Code section 2252(a)(4)(B); and Accessing Child Pornography, in violation of 18 United States Code section 2252(a)(4)(B).

In this case, on or about November 27, 2009, NCMEC received information from AOL in the form of a Cybertip, that AOL had discovered an image depicting child exploitation within its computer system. The Cybertip was accompanied by an image file containing possible child pornography. There was a file name associated with the image and the email sender was identified by an email name. After locating those files, AOL notified NCMEC who, in turn, examined the image and at some point thereafter, forwarded the information to law enforcement. The NCMEC information sent to law enforcement included the screen name of the AOL client who was responsible for uploading the child exploitation image to their system, as well as a description of the file.

The information provided by AOL to NCMEC, and ultimately to law enforcement, was a precise file description of the material discovered within the AOL system. Part of that file description, referred to as a hash value, is a unique signature of the child exploitation file uploaded to the AOL system. A hash value is essentially a fingerprint unique to an image. By utilizing a

hash value, AOL is able to precisely identify the image as one depicting child exploitation and filter it out of its system. As is expected to be detailed in a declaration of AOL which is expected to be filed prior to the motion to suppress hearing in this case, AOL performs the function of filtering out images depicting child exploitation on a routine basis to both protect its own system and its customers.

In this case, the search warrant included a description of the image, as well as information establishing what the IP address was and other information relative to that address and also information relative to the defendant David Keith. Utilizing that information, law enforcement officers obtained and search a search warrant for the defendant’s residence. As a result of that search, numerous image files depicting child exploitation were located within the defendant’s residence. In fact, two computers were ultimately seized from the defendant’s residence and child pornography images were located on both computer. During a post-arrest, Mirandized, interview, the defendant confessed to his involvement with child pornography images.

The Cybertip image that was forwarded by AOL to NCMEC, as well as the 18 other Cybertips and images (for a total of 19)

that were also forwarded from AOL to NCMEC, were also described in the affidavit. Trooper Murphy represented the contents of the image contained in Cybertip # 759801 in his affidavit as follows: the image was entitled “12yo preparing to enter.jpg” and depicted an apparent pre-pubescent male with an erect penis that was touching the anus of another child of unknown gender. A copy of that image as well as the other Cypbertip images can be provided to this Court under seal should the Court wish to review same.

For context, on April 16, 2010, Trooper Murphy received a Cypbertip from a Trooper Ware who was working as the Massachusetts Internet Crimes Against Children Coordinator assigned to the Digital Evidence and Multimedia Section of the Massachusetts State Police. The Cybertip, which came in the form of a DVD, contained information alleging that an individual or individuals using the email address “amanda175069@aim.com” had disseminated a still photographic image of child sexual abuse.[9] The image was entitled “12yo preparing to enter.jpg” and depicted an apparent pre-pubescent male with an erect penis that was

[9] During his September 17, 2010, interview, when the defendant was informed by authorities that there is a list of AOL screen names that came back to the defendant’s residence and all involved different versions of the name “amanda”, the defendant admitted all those screen names were his.

touching the anus of another child of unknown gender. The email was dated November 26, 2009, 10:37:49 AM and was sent to an individual or individuals using the e-mail address "Megan61788@aol.co " from a particular Internet Protocol (IP) address, 72.70.113.41. The Cybertip contained eighteen additional related Cybertips detailing more e-mails with images of child sexual abuse to various e-mail addresses.[8] Trooper Ware related to Trooper Murphy that the FBI had started an investigation on several of the related Cybertips. In particular, a FBI analyst assigned to the NCMEC, was working on the tips and obtained subpoena information detailing the subscriber for the above IP address for the time period of November 19, 2009, through January 29, 2010, which encompasses the time frame for several of the Cybertips received (ie, a total of twelve e-mails with attachments containing images of child sexual abuse). Upon receipt of the above mentioned Cybertips, Trooper Murphy conducted an internet search on the origin of two IP addresses: 72.74.1.71 and 72.70.109.136 and found them to be issued to the ISP Verizon Internet Services.

[8] The corresponding numbers for each of the nineteen additional Cybertips are contained in Trooper Murphy's affidavit at paragraph 1, page 4.

Those IP addresses are associated with Cybertip # 816744 and 838388 respectively. As a result of that information, the Essex County District Attorney's Office issued administrative subpoenas to Verizon Internet Services to provide records and other information pertaining to its subscriber(s) for two different dates and times relating to the above two IP addresses: April 19, 2010, at 00:05:24 for IP address 72.74.1.71 and March 27, 2010 at 19:15:27 for IP address 72.70.109.136. On May 10, 2010, Verizon Internet Services responded to the subpoenas and indicated that Douglas Keith of 1 Marshland Street, Haverhill, Massachusetts, was the subscriber who had been assigned both IP addresses on the dates specified in the subpoena. Douglas Keith is the defendant's grandfather with whom he resides.

On July 2010, Trooper Murphy received materials from the FBI analyst at NCMEC. The materials contained the Cybertips that the analyst began working on including the subpoena information. On January 29, 2010, the FBI issued a subpoena requiring Verizon Internet Services to provide records and other information pertaining to its subscriber having having IP address 72.70.113.41 on December 31, 2009, at 21:46:32. On February 1, 2010, Verizon Internet Services responded to the subpoena that

Douglas Keith was the subscriber.[9]

On September 16, 2010, Trooper Murphy received a telephone call from Haverhill Police Department who related to Trooper Murphy that the detective had been contacted by the Plaistow, New Hampshire, police department in reference to a David Keith, d/o/b x-xx-82, of 1 Marshland Street, Haverhill. According to Plaistow Police Sergeant Patrick Caggiano's affidavit, in July, 2010, Plaistow Police Department received a report from a Staples store in New Hampshire relative to possible child pornography contained on a hard drive of a Toshiba laptop computer with a particular serial number. Per the Staples work order, that laptop is owned by David Keith, 1 Marshland Street, Haverhill, MA.

The defendant brought the Toshiba laptop to a Staples store in Plaistow, New Hampshire, sometime in July, 2010 for repair. Thereafter, Staples alerted authorities after determining that the computer contained child pornography. On July 29, 2010, Plaistow police responded to the Staples store after employees contacted authorities about the suspected child pornography on that laptop computer. On August 10, 2010, the defendant was

[9] In the affidavit, Trooper Murphy includes the various database checks he conducted to determine the residence of Douglas Keith and who else resides there.

interviewed by New Hampshire authorities relative to that laptop and he admitted that the Toshiba laptop was his and that he had seen and downloaded images of children as young as 8 years old engaged in sexual activity, commonly referred to as child pornography. (See paragraphs 11-12 of document #23-3). Keith also admitted he frequents a large amount of pornographic sites and that he has seen and downloaded upwards of 50 files depicting images of children as young as eight years old engaging in sexual activity. (See document 3 23-4 attached to Def.'s Mot.).

After obtaining a search warrant for the Toshiba computer, New Hampshire authorities submitted it for a forensic examination. Multiple online chat messages with various individuals discussing the possible sexual abuse of a child living in the home of David Keith were recovered. In the chat, the child is referred to as by a particular name. The examination also recovered an image of a child approximately 8-10 years of age with blond hair wearing the name of a particular elementary school t-shirt. Therefore, Haverhill Police contacted that elementary school and learned that there is a minor student enrolled at that school who resides at 1 Marshland Street with the same first name as referenced in the chat message. Police determined that minor resides at that address with Keith and his

grandparents. In addition, the forensic analysis of the Toshiba computer recovered a photograph of the defendant and in the background of the photograph is a computer monitor and other computer equipment. Additionally, the forensic exam recovered a saved chat dialogue between user id “ordrictien1" and “Meagan61788" which discussed the intent to “play with his little brother” whom he refers to as that same particular name referenced above and to “start showing [that minor] pornographic pictures”. The Toshiba computer was not returned to the defendant.

In his affidavit in support of the September 17, 2010, state search warrant, Trooper Murphy included information that, in his training and experience, the computer monitor and equipment depicted in the photograph recovered by the forensic examiner who examined the Toshiba computer was for an additional computer at that same address.

In his affidavit, Trooper Murphy sought permission to search the residence for evidence of the distribution and possession of child pornography. A state court clerk granted the search warrant, it was executed the same day, and in good faith reliance thereon, agents searched the defendant’s home that same day. During the search, agents seized the following: a Gateway FX

tower computer, as well as media, CD/DVDs, floppy disc, VHS tape, and cell phones, among other items (see Search Warrant Return attached to Def.'s Mot. as document 23-5).[10] The Gateway computer was located in the defendant's bedroom and the HP Pavillion, which had been disconnected prior to the arrival of authorities, was located in a hallway. Massachusetts State Trooper Hart, a forensic examiner and who later conducted a full examination of both computers seized, conducted a preliminary examination of the Gateway at the residence on the date of the execution of the search warrant, and previewed the Gateway hard drive. On later date(s), he conducted a full forensic examination of both computers and located images of child pornography on both computers.

Upon arriving at the defendant's residence to execute the search warrant, the defendant, as well as his grandparents, Douglas and Sharon Keith, were home at the time. The defendant was in his bedroom sitting in front of the Gateway computer using the internet when police arrived. He was advised of his rights,

[10] A second computer, a HP Pavillion tower computer, was seized by law enforcement approximately three days later in further execution of the search warrant after the defendant's grandparents notified law enforcement of a second computer that was located at the premises. The HP computer is listed on the search warrant return.

signed a Miranda form and consented to speak with authorities. (See signed Miranda form attached to Government's Opposition as Exhibit # 2). The interview was audio recorded.

After signing the Miranda form, Keith initially indicated to authorities there would be no child pornography on the Gateway computer. However, thereafter during the interview, he acknowledged that in the recent past, he had an issue with child pornography. Additionally, at some point in the interview, troopers learned from another trooper who was elsewhere in the residence examining the Gateway computer, that there was evidence that child pornography had been accessed on the Gateway (which was determined to be the newer of the two computers). Troopers confronted Keith with this information and he indicated that he downloaded one thing containing child pornography. The defendant was informed that the child pornography has been viewed on that computer and it is not there by accident because the only way one could access the child pornography on that computer was by opening up the documents. The defendant admitted he opened up documents on that computer and looked at child pornography. The defendant also indicated the only child pornography he looked at on the Gateway computer was contained in attachments to a couple of old emails. Keith was asked what email account he used to

view the images and he indicated he thought he viewed these images while reviewing his email account "jibble_316@yahoo.com".

Further, authorities learned that the defendant was the only person in the residence who used both the Gateway and the HP Pavillion computers. The defendant stated he went through old emails on his Gateway and, it happened that there were two that had pictures in there. He was then asked by authorities whether he opened them and looked at them to which he replied in the affirmative. The defendant viewed these child pornography images on the Gateway at some point after the defendant had already been questioned by the New Hampshire authorities about the Toshiba computer.

Keith admitted to having viewed and downloaded images of child sexual abuse (i.e., child pornography). He also said he knowingly sent images of child sexual abuse via email using several different email accounts/screen names, including ordricstein1@aol.com, to at least one email address entitled meagan61788@aol.com.[11] He indicated he did not know the actual

[11] During that same interview, Keith also admitted that on one occasion, he sexually abused the same minor family member (discussed previously herein) who lives at that residence, when the child was approximately 15 months old. Keith described the oral rape he committed upon that infant while alone with the infant inside of the residence. That boy is the child who was

identities of the persons he sent the images to; rather, he only knew the screen names. He related he was the only person in the house who sent the child pornography emails. The investigation revealed Keith corresponded via email with the subscriber of the email address meagan61788@aol.com. That communication contains sexually graphic requests for criminal sexual acts.[12] ICE has confirmed that the defendant is the subscriber of the following email accounts: jibble_316@yahoo.com?, keith2376@aol.com, and ordricstien@aim.com?.

As indicated earlier, at some point, a full forensic examination of both the Gateway computer and the HP Pavillion computer was conducted by Trooper Kevin Hart. (See 11/4/10 Initial Forensic Report of Trooper Hart, attached as Exhibit #1.) Among other things, the examiner browsed the directory structure looking for any notable pictures but found none. The examiner then attempted to carve pictures out of the file thumbcache _256.db which is a system file that stores all of the thumbnail

depicted in a photograph found on the Toshiba laptop. As a result of this admission by Keith, authorities interviewed the minor boy who had no recollection of being sexually abused by the defendant. No charges issued against Keith relating to that incident.

[12] Authorities determined the name of the subscriber for the email address meagan61788@aol.com to be an adult male.

pictures located on the system. Thumbnails are smaller versions of pictures that are used by the operating system to display the contents of a picture without opening the full sized version of that picture. The examiner located 56 notable pictures of child pornography within the thumbcache_256.db file. Per the trooper, the images were of children who appeared to be between 6-10 years old, nude, with some engaged in sexual acts while others were posed nude with the focus of the picture being their genital areas. Additionally, there were 17 videos that appeared to be encrypted but without the password, those files were unable to be played which means the trooper was unable to actually play the files to see what was on them. Examination also revealed that the Gateway computer began to be used in August, 2010 (which was after the defendant delivered the Toshiba laptop to Staples).

The HP Pavillion ("HP") was an older computer. It too, was examined by Trooper Hart using a similar procedure as he used for examination of the Gateway. His examination of the HP revealed there were 37 incoming email messages that contained notable email attachments (i.e., child pornography images) and 70 outgoing emails (for dates between 2004 and March 17, 2006) that contained notable email attachments located on that computer. For the majority of those emails, Trooper Hart was able to view

the address to whom the email was sent, the address from whom it was sent as well as the attachment on those emails. With respect to the outgoing emails, Trooper Hart observed children, or whom he believed to be children, whom he estimated to be between the ages of 4 and 12 years old, who were unclothed and posed in a provocative manner. He also related that there are certain series of child pornography that one tends to see over and over again. Some of the images that Trooper Hart observed as attachment to emails on the HP, he recognized some to be parts of series that he had seen before. Further, may of the images appeared to be of the same child but in different poses. In other attachments to outgoing emails from the HP, Trooper Hart also observed images of children, whom he estimated to be possibly as young as 2 years old and up to 12 years old, engaged in sexual activity and that sexual activity was with other children and/or male adults. In addition, Trooper Hart also located approximately 1,600 still images on the HP that were not attached to emails and those 1,600 images appeared to depict children, or what appeared to be children, engaged in various acts of sexual activity or posed in a sexually explicit manner.

On the HP computer, Trooper Hart found emails to and from the defendant, addressed to him as well as registration or

product information for particular products the defendant purchased that contained billing information with the defendant's name and Haverhill address. Further, the trooper also viewed what appeared to be a self-portrait of the defendant that was taken with a web cam. The trooper found no evidence of anyone other than the defendant using that computer as nobody else's name or image was attributed to that computer. In total, 1,695 notable pictures of child pornography were found on the HP.

## II. ARGUMENT

### A. The Initial Discovery Of Child Pornography Images by AOL and AOL's Transmittal to NCMEC, Did Not Involve State Action as Neither AOL Nor NCMEC Are Government Agents

For purposes of this response, the government will assume the facts of the case relating to the motion to suppress are those contained in the police reports, affidavits, search warrants, search warrant returns, forensic examination reports, signed Miranda form, and Cybertips.[13] The initial discovery of the suspected child pornography by AOL did not involve state action and thus is outside the purview of the Fourth Amendment.

---

[13] For definition of Cybertip, see paragraph 2 of Trooper Murphy's application and affidavit in support of search warrant (attached to Def's mot. as document # 23-3). Further, the government attaches hereto Exhibit #3 which is "Addendum A" referenced in paragraph 1, page 4 of Trooper Murphy's affidavit.

The Fourth Amendment applies only to searches and seizures that are the product of state action. See United States v. Doe, 61 F.3d 107, 109 (1st Cir. 1996). A search or seizure conducted by a private party not acting as an agent of the government is shielded from Fourth Amendment scrutiny. The government asserts as there was no government action in this case, (at least in relation to the initial discovery of the child pornography images by AOL and the transmittal and review of the cybertip and attached image(s) from AOL to NCMEC, and later from NCMEC to law enforcement officials) the Fourth Amendment is not triggered.

The Fourth Amendment guarantees citizens the right to be free from"unreasonable searches and seizure." U.S. Const. Amend. IV. But for a few exceptions, warrantless searches and seizures are "per se unreasonable." See United States v. Richardson, 607 F.3d 357 (4th Cir. 2010), quoting Schneckloth v. Bustamonte, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)(internal quotation marks omitted). The Fourth Amendment, however, does not protect against searches, no matter how unreasonable, conducted "by private individuals acting in a private capacity." United States v. Jarrett, 338 F.3d 339, 344 (4th Cir. 2003); see United States v. Jacobsen, 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2s 85 (1984). Rather, the Fourth Amendment "proscribe[es]

only governmental action," Jacobsen, 455 U.S. at 113, 104 S.Ct. 1652, and thus "evidence secured by private searches, even if illegal, need not be excluded from a criminal trial," United States v. Ellyson, 326 F.3d 522, 527 (4th Cir. 20030 (internal quotation marks omitted).

In Richardson, the Fourth Circuit concluded that a statutorily inspired records search conducted by AOL did not constitute state action. 607 F.3d 357, 360 (4th Cir. 2010). This Court should follow the reasoning in Richardson. There, AOL discovered child pornography that the defendant had transmitted using his AOL email account. Id. at 360. Pursuant to its mandatory reporting obligation, AOL reported Richardson's account information to NCMEC, which then related this information to the state law enforcement authorities. Ibid. Richardson argued on appeal that AOL's search of his email was "an unconstitutional search on behalf of the Government". Ibid.

The Fourth Circuit rejected Richardson's argument, concluding that "AOL's actions did not equate to governmental conduct triggering constitutional protection." Id. at 364. Critical to the Fourth Circuit's conclusion was its finding that "no law enforcement agency specifically asked AOL to search Richardson's email or provided information to cause AOL to scan

Richardson's emails. Neither did law enforcement officials request that AOL aid the investigation of Richardson except through the ordinary forms of compulsory legal process. Id. at 364-65; see also Id. at 365-367 (rejecting Richardson's argument taht reporting pursuant to [18 United States Code] section 2252A's predecessor statute implicated the Fourth Amendment and nothing that the statute does not require companies to search affirmatively for child pornography). In the present case, the record is devoid of any evidence that the government had any involvement in AOL's discovery of the child pornography evidence.

"The Supreme Court has consistently construed the Fourth Amendment protection as limiting only governmental action." United States v. Momoh, 427 F.3d 137, 140 (1st Cir. 2005). A private search only implicates the Fourth Amendment if the private party acts as a "government agent". United States v. Silva, 554 F.3d 13, 18 (1st Cir. 2009). In Silva, this Court described its three part test to determine whether a private party has acted as a government agent for Fourth Amendment purposes: this Court will consider "[1] the extent of the government's role in instigating or participating in the search, [2] its intent and degree of control it exercises over the search and the private party and [3] the extent to which the private

party aims primarily to help the government or to serve its own interests." 554 F.3d at 18 (quoting United States v. Pervaz, 118 F.3d. 1, 6 (1st Cir. 1997)). The First Circuit has made clear, however, that it will "not find state action simply because the government has a stake in the outcome of a search." Silva, 554 F.3d at 18. Similarly, compliance with governmental regulations does not transform a private party's activities into state action for Fourth Amendment purposes. See, e.g., Jackson v. Metropolitan Edison Co., 419 U.S. 345, 354-55 (1974).

Here, AOL acted in a private capacity pursuant to a legal obligation under section 2258A, that required it to report the existence of child pornography or face the prospect of civil liability. No government agent instructed AOL to report the child pornography. Under the Court's three-part Silva test, AOL's actions were purely private. First, the "extent of the government's role in instigating or participating in the search" was non-existent; the government literally played no role. Second, the government similarly exercised no control over the search or over AOL. AOL was not pressured to report the child pornography images at issue in this case; it did so of its own violation. Third, AOL's actions were not motivated "to help the government", rather it was "serving its own interests" by seeking

to avoid civil liability. Because each of the three Silva factors militate strongly against a finding of state action, this Court should conclude that AOL's actions did not implicate the Fourth Amendment.

Even assuming *arguendo* that either AOL's actions in relation to the Cybertips images of suspected pornography, or the transmittal of same by AOL to NCMEC, or the review of same by NCMEC, constitutes a search, the search is outside the bounds of the Fourth Amendment because the law enforcement was not involved and neither AOL nor NCMEC are agents of the police. AOL and NCMEC were not acting in furtherance of a police directive or on behalf of the police. The defendant has no remedy against the police, as the police took no part in the these actions.

The defendant shoulders the responsibility for proving that an agency relationship between AOL, NCMEC, and the government exists and has failed to carry his burden of establishing the existence of any agency relationship. See Richardson, at 364. The defendant has not established that AOL acted as a government agency when it used the hash value to examine its own computer system in an effort to protect such system from various dangers inherent in the internet and internet based communications. In fact, AOL's discovery of child pornography associated with a

computer at the defendant's residence was the result of routine scanning the company conducts to recognize files that may be detrimental to AOL. See Richardson, at 363. The question of whether a private entity such as AOL or NCMEC serves as a mere conduit for the government in performing a search "necessarily turns on the degree of the Government's participation in the private party's activities". Skinner v. Railway labor Executives' Ass'n, 489 U.S. 602, 614, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989).

"[T]here must be some evidence of Government participation in or affirmative encouragement of the private search before a court will hold it unconstitutional. Passive acceptance by the Government is not enough." Jarrett, 338 F.3d at 346. Additionally, we generally look for evidence bearing upon the question of "whether the private party's purposes for conducting the search was to assist law enforcement efforts or to further h[is] own ends." Richardson at 364, quoting Ellyson, 326 F.3d at 527 (internal quotation marks omitted). Thus, the key factors bearing upon the question of whether a search by a private person constitutes a government search are: "(1) whether the Government knew of an acquiesced in the private search' and (2) whether the private individual intended to assist law enforcement or had some

other independent motivation." Jarrett, 338 F.3d at 344.

There is no question that law enforcement agents did not actually participate in the search at issue here. No law enforcement agency specifically asked AOL to search Keith's computer/email or provide information about Keith to cause AOL to scan his emails. Neither did law enforcement officials request that AOL or NCMEC aid in the investigation of Keith other than administrative subpoenas and a preservation request served pursuant to the Stored Communications Act "for the purpose of identifying the name, address, and other subscriber identifying information for an AOL client." See Richardson at 365; citing 18 U.S.C. section 2703. Defendant has made no claim to suggest that law enforcement agents were involved in the search or investigation of Keith's email transmissions/computer until after AOL reported its discoveries to NCMEC. There is no evidence to demonstrate the existence of a de facto agency relationship between AOL and the Government.

Keith argues that by mandating AOL's compliance with the reporting scheme set for in 18 U.S.C. section 2258A, the government actively encourages the search of his email and

transformed AOL into its agent.[14] The simple reporting requirement of section 2258A requires that an Internet Service Provider ("ISP") such as AOL report to the Cyber Tip Line at NCMEC in the event it "obtain[ed] actual knowledge of any facts or circumstances from which a violation of sections ...2251, 22521A, 2253, 2252A or 2260 that involves child pornography ...[wa]s apparent." 18 U.S.C. section 2258(a)(1),(2)). Unlike the regulatory scheme at issue in Skinner, this section neither directed AOL to actively seek evidence of child pornography in certain circumstances nor prescribed the procedures for doing so in the event that AOL decided to ferret out subscribers using its system to transmit illegal digital images. In fact, Congress made abundantly clear that section 13032(b)(1) was not to be interpreted as requiring an ISP to monitor a subscriber's internet activity, explicitly stating that "[n]othing in this section may be construed to require a provider of electronic communication services or remote computing services to engage in the monitoring of any user, subscriber, or customer of that provider, or the content of any communication of any such

[14] 42 U.S.C. section 13032 is no longer in effect. The reporting requirements of this provision have been amended and are codified in 18 U.S.C. section 2258A. See Richardson, 607 F.3d at 360, n.1.

person." 42 U.S.C. section 13032(e); see Richardson at 367. Like Richardson did, here Keith attempts to draw an analogy between the simple reporting requirements of section 2258A and the regulatory scheme at issue in Skinner authorizing a search. The Court in Richardson rejected that attempt and this Court should likewise do the same.

The plain language of section 2258A clears the way for ISPs to report violations of the child pornography laws, not investigate them. The provision was clearly aimed at immunizing civil claims for mistaken and incorrect reports issued to the NCMEC and in no way encourages surreptitious searches. Richardson at 367. Thus, the statutory provision pursuant to which AOL reported Keith's activities did not effectively convert AOL (or NCMEC) into an agent of the Government for Fourth Amendment purposes.

Essentially, the defendant argues that the image utilized to support the finding of probable cause that the defendant possessed or distributed images of child exploitation was obtained by AOL while acting as an agent of a law enforcement agency. Contrary to defendant's assertion, there were several other child pornography images in the form of other Cybertips that were referenced in Trooper Murphy's affidavit and therefore,

it was not simply one tip that was solely relied upon. Similarly, the defendant asserts that NCMEC also acted as an agent of a law enforcement agency. Those claims, however, are not supported by the facts of this case.

The one image which is the focus of the defendant's claim in his motion to suppress, namely, Cybertip # 759801, was provided to NCMEC by AOL on or about November 26, 2009. AOL captured the email traffic relative to this image on November 26, 2009. After receiving the image from AOL, NCMEC processed the information on December 4, 2009, and thereafter provided the image to law enforcement. (See NCMEC CyberTipLine Report attached to Def's Mot. as document # 23-1).

Neither either AOL nor NCMEC are law enforcement agencies. Rather, NCMEC is a non-profit organization, funded in part by the United States government. According to the NCMEC website, (www.missingkids.com), "NCMEC was established in 1984 as a private, nonprofit 501(c)(3) organization to provide services nationwide for families and professionals in the prevention of abducted, endangered, and sexually exploited children." While NCMEC may partner with various law enforcement agencies to perform its function, it is not a government agency. Clearly, therefore, its actions are not limited by the Fourth Amendment to

the United States Constitution. By the defendant’s own argument, it was NCMEC and not AOL that provided the image in question to law enforcement.

Prior to the oral argument on this motion to suppress the government anticipates filing a declaration provided by an AOL representative that will detail the methods used by AOL to located and remove images of child exploitation within its own internal system. Due to the inherent danger and potential liability associated with images of child exploitation, AOL scans its system utilizing a mathematical formula (a hash value) and a numerical files size to locate and remove such images from within its system. Once such images are located they are removed from the system. AOL also has a legal obligation to notify law enforcement once such images are located within its system.
The methods and procedures used by AOL are those necessary to protect its own operating system from harm. Contrary to defense claims, AOL does not engage ins such procedures at the request of law enforcement. Only after such images are located does AOL contact law enforcement. That contact, however, is mandated by federal law. (See, 18 U.S.C. section 2702).

The materials and information utilized in this case established that law enforcement officers were notified by NCMEC,

that AOL had detected images of child exploitation within its operating system. Using that information, law enforcement conducted further investigation to establish that the defendant was the person responsible for transmitting the offending images through the AOL system. Although neither AOL or NCMEC are specifically referenced in the affidavit, nonetheless, the state court clerk's decision to approve the search warrant based upon the information contained in the affidavit, should not be disturbed by this Court.

**B. The Evidence in Support of Probable Cause Was Not Stale and Did Support the Issuance and Execution of Search Warrant for 1 Marshland Street, Haverhill, on September 17, 2010**

Next, the defendant contends that evidence obtained during the September 17, 2010, search should be suppressed because the search warrant affidavit contained stale information and thus did not establish probable cause to believe that evidence of child pornography would be found at the defendant's home on September 17, 2010. Given the nature of the allegations in the search warrant affidavit and the well-recognized characteristics of child pornography offenses, this claim also must fail.

In order to withstand scrutiny under the Fourth Amendment, a search warrant application must demonstrate probable cause to believe that (1) a crime has been committed (commission element)

and (2) evidence of the offense will be found at the place to be searched (nexus element). See United States v. Morales-Aldahondo, 524 F.3d 115, 119 (1st Cir. 2008); United States v. McMullin, 568 F.3d 1, 6 (1st Cir. 2009). The nexus element can be inferred from the type of crime, the nature of the items sought, the extent of an opportunity for concealment and normal inferences as to where a criminal would hid evidence of such a crime. United States v. Thompson, 630 F.Supp. 2d 138, at *4 (D. Mass. June 3, 2009); (citing United States v. Feliz, 182 F.3d 82, 88 (1st Cir. 1999)). The facts alleged in support of the warrant must be "so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time." See United States v. Lacy, 119 F.3d 742, 745 (9th Cir. 1997) (internal quotations and citations omitted). Put another way, the facts supporting the warrant cannot be stale. There is no bright line rule as to when a fact becomes stale. See Morales-Aldahondo, 524 F.3d at 119. Rather, courts assess staleness claims on a case-by-case basis, considering such factors as the nature of the information supporting the warrant, the nature and characteristics of the suspected criminal activity and the likely endurance of the information. See Id.

While each case must be considered on its own unique facts,

existing case law provides guidance with respect to staleness claims in cases involving child pornography. For instance, courts consistently have recognized that collectors and traders of child pornography often retain their collections for long periods of time. See United States v. Ricciardelli, 998 F.2d 8, 12, n.4 (1st Cir. 1993) ("exigent circumstances will rarely, if ever, be present in child pornography cases, as history teaches that collectors prefer not to dispose of their dross, typically retaining obscene material for years"). Thus, evidence which might be considered too old in one context is often not considered stale in a case involving child pornography. See, e.g., Morales-Aldahondo, 524 F.3d at 119 (evidence not stale where defendant downloaded images of child pornography three years prior to issuance of search warrant); United States v. Cameron, 729 F.Supp.2d 418 (D.Me. 2010)(four months between NCMEC forwarding to law enforcement and search warrant being executed); United States v. Roby, 27 Fed. Appx. 779, 780 (9th Cir. 2001) (unpublished) (evidence not stale where defendant downloaded images of child pornography eight and one-half months before warrant was executed); Lacy, 119 F.3d at 745-46 (evidence not stale where defendant downloaded images ten months prior to issuance of search warrant); United States v. Sherr, 400 F. Supp.

2d 843, 846-47 (D. Md. 2005) (eight month delay between defendant's receipt of child pornography and issuance of warrant not sufficient to render information stale). In each of these cases, the court relied, at least in part, on the understanding that collectors of child pornography typically retain their collections for a long time.[15]

In addition, the evidence in most child pornography cases consists of digital images obtained from the Internet and saved to a hard drive or other storage device. See, e.g., Morales-Aldahondo, 524 F.3d at 117 (evidence indicated that defendant purchased access to various child pornography websites); Lacy, 119 F.3d at 745 (evidence indicated that defendant downloaded six digital photographs of child pornography). Digital files have the ability to withstand the test of time. Indeed, even deleted files can often be retrieved with the appropriate software. See, e.g., United States v. Hay, 231 F.3d 630, 636 (9th Cir. 2000) (evidence supporting search warrant is not stale where defendant received images of child pornography on his computer six months prior to issuance of search warrant and, among other things,

---

[15] In most instances, as in this case, the case agent included such language in the search warrant affidavit. See paragraphs xv, xvi on page 13 of Trooper Murphy's search warrant affidavit.

affidavit indicated that even if the files had been deleted, they could be retrieved). Thus, to the extent a case involves evidence that an individual possesses digital images of child pornography, a delay between such possession and execution of a warrant is not likely to render the evidence stale.

In this case, the search warrant specifically included authority to search Keith’s residence for any computer systems, computer hardware, computer software, cell phones and any and all digital and analog media. The search warrant was obtained on September 17, 2010, which was within one day of the state police receiving information from authorities in New Hampshire relative to the seized Toshiba computer belonging to the defendant and defendant’s admitted to New Hampshire authorities that the Toshiba laptop is his and that he has seen and downloaded images of children as young as 8 years old engaged in sexual activity (see paragraph 11 of Trooper Murphy’s search warrant affidavit), and within six months (April 16, 2010) of Trooper Murphy first receiving the Cypbertip in this case. See paragraph 1 of Trooper Murphy’s search warrant affidavit (attached to Def’s Mot. as document # 23-3) and see Plaistow, New Hampshire Sergeant Patrick Caggiano’s affidavit (attached to Def’s Mot. as document # 23-

4).[16]

In his search warrant, Trooper Murphy includes the oft-cited principle that collectors of child pornography generally retain their collection for years. In particular, the search warrant affidavit states:

> I know that those who have demonstrated an interest in or preference for sexual activity with children– or in sexually explicit visual images depicting children – are likely to keep secreted, but readily at hand, sexually explicit visual images depicting children...These depictions tend to be extremely important to such individuals and are likely to remain in the possession of or under the control of such an individual for extensive time periods, perhaps for a lifetime.
> I know that persons who collect and share sexually

[16] Sergeant Caggiano's affidavit also includes information relative to the forensic examination that was conducted on the Toshiba laptop referenced above and that a partial [forensic] report was completed on or about September 13, 2010. During the course of the forensic exam, multiple online chat messages with various individuals discussing the possible sexual abuse of a child living in the home of David Keith (the defendant) were recovered; an image of a male child approximately 8-10 years old was also recovered and authorities were able to determine that child's name and that the child lived at 1 Marshland Street (Haverhill). In addition, the forensic examiner recovered a photograph of the defendant and in the background of the photograph was a computer monitor and other computer equipment. The Toshiba computer referenced herein is a laptop. In his affidavit, Trooper Murphy related that based on his training and experience it is reasonable to conclude that the computer monitor and equipment depicted in the photograph referenced herein is for an additional computer at 1 Marshland Street, Haverhill, Massachusetts. See paragraph 12 of Trooper Murphy's affidavit and see Sergeant Caggiano's affidavit.

> explicit visual images depicting children often keep their materials. Typically, they are reluctant to destroy the images and will keep them for long periods of time – in many instances for years and years.

See paragraphs xv, xvi on page 13 of Trooper Murphy's affidavit. Given the propensity of collectors to hold onto their collections and the endurance of digital evidence, the information contained in the search warrant affidavit of Trooper Murphy was not stale at the time the warrant was executed.

**C. The Information Contained in the Search Warrant Affidavit Established Probable Cause to Believe That Evidence of Dissemination and Possession of Child Pornography Would be Found in the Defendant's Residence on September 17, 2010**

The evidence at the defendant's residence was properly seized pursuant to a valid search warrant that was based on probable cause. A warrant may not be issued unless probable cause is properly established and the scope of the authorized search is set out with particularity. Kentucky v. King, 131 S.Ct. 1849 (2011). Clearly both of those requirements have been met in this case. Here, AOL brought the images to the attention of NCMEC who examined them and thereafter, brought them to the attention of law enforcement who began an investigation. Probable cause existed to obtain and execute a search warrant for the residence.

In Illinois v. Gates, 462 U.S. 213 (1983), the United States

Supreme Court set the standard for probable cause necessary to support the issuance of a search warrant. There the Court held that “the term ‘probable cause,’ according to its usual acceptation, means less then evidence which would justify condemnation...it imports a seizure made under circumstances which warrant suspicion.” Id., at 235. The Court continued, “Finely-tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the magistrate’s decision...its it clear that only the probability, and not a prima facie showing, of criminal activity is the standard for probable cause.” Id.[17] Gates makes clear, therefore, that probable cause does not require a showing of actual criminal activity at a specific location. Rather, it requires only the showing of a probability of criminal activity and that evidence of commission of a crime will be located at the place to be searched. And “courts should not invalidate warrants by interpreting affidavits in a hypertechnical, rather than a common-sense manner.” Gates, 462 U.S. 213, at 236 (1986). The Supreme Court has observed that “doubtful cases should be resolved in favor of upholding the warrant.” See United States

---

[17] In the present case, a state district court clerk issued the state search warrant.

v. Ventresca, 380 U.S. 102, 106 (1965). It bears mention that the Fourth Amendment expresses a strong preference for searches conducted pursuant to a warrant. See Gates, 462 U.S. at 236. Thus, a magistrate's (and in this case, a state court clerk magistrate's) determination of probable cause is entitled to great deference by a reviewing court. Id.

Here, there was probable cause to believe that there would be evidence of a crime at the defendant's residence as outlined in Trooper Murphy's affidavit containing information of the investigation conducted in this case and included by incorporation and reference, Sergeant Caggiano's affidavit. Further, per the information in the affidavit, Trooper Murphy's held the opinion that he was likely to find contraband connected to this case at the defendant's residence bolstered the probable cause upon which the warrant was based. Given his several years of experience in conducting similar investigations, Trooper Murphy's opinion was due substantial weight. Courts have held that it is appropriate to rely on the opinions of law enforcement officers about where contraband might be found. United States v. Hargus, 128 F.3d 1358, 1362 (10th Cir. 1997); United States v. Jenkins, 910 F.2d 1075, 1081 (11th Cir. 1990).

The issuing state court clerk made a practical, common sense

decision, that, given all of the circumstances set forth in the affidavit before him, there was a fair probability that contraband or evidence of a crime would be found at that particular place. The duty of this court is to simply ensure that the magistrate had a substantial basis for concluding that probable cause existed. Illinois v. Gates, 462 U.S. 213 (1983).

The probable cause standard is not tantamount to proof beyond a reasonable doubt. See United States v. Grant, 218 F.3d 72, 75 (1st Cir. 2000). Nor is it as stringent as proof by a preponderance of the evidence. See United States v. Thompson, 630 F.Supp.2d 138, at *5 (D.Mass. June 3, 2009). Indeed, probable cause does not even require that it be more likely than not that evidence of a crime will be found at a particular location. Id. Rather, probable cause is more akin to a standard of "reasonable cause" Put another way, probable cause to issue a search warrant exists when "given all the circumstances set forth in the affidavit . . .there is a fair probability that contraband or evidence of a crime will be found in a particular place." McMullin, 568 F.3d at 6 (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)). The government has met the probable cause standard.

**D. The Leon "Good Faith" Exception, If Necessary, Defeats a Request to Suppress**

Assuming, arguendo, that the evidence was stale and/or there was no probable cause to justify issuance of the warrant, the evidence obtained as a result of the search should not be suppressed under the good faith exception to the warrant requirement. See United States v. Leon, 468 U.S. 897 (1984); see also Pappas, 592 F.3d at 801-03 (without deciding question of probable cause, court held that agents reasonably relied upon search warrant in child pornography case where evidence was eighteen months old); Sherr, 400 F.Supp. 2d at 847 (eight-month delay did not render evidence stale but, even if it did, suppression would be inappropriate under good faith exception to warrant requirement).

The search of 1 Marshland Street in Haverhill was justified by the warrant validly issued for the search of the property. The police officers' reliance on the warrant for justification of the search of the apartment was both reasonable and in good faith. See Leon, 468 U.S. 897 (1984). The good faith exception enunciated in Leon validates the search. In Leon, the Supreme Court held that evidence need not be suppressed when "an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope." Leon, 468 U.S. at 920. Therefore, the evidence need not be suppressed.

The reasons behind the exclusionary rule do not come into play and suppression is not required, as long as the officers acted in good faith. It is the magistrate's obligation to determine probable cause. An officer or agent is not "expected to question the magistrate's probable cause determination." Leon, 468, U.S. at 921.

> The basic insight of the Leon line of cases is that the deterrence benefits of exclusion "var[y] with the culpability of the law enforcement conduct" at issue. ...When the police exhibit "deliberate," "reckless," or "grossly negligent" disregard for Fourth Amendment rights, the deterrent value of exclusion is strong and tends to outweigh the resulting cost. ...But when the police act with an objectively "reasonable good-faith belief" that their conduct is lawful, ...or when their conduct involves only simple, "isolate" negligence, ... the '"deterrence rationale loses much of its force,"' and exclusion cannot "pay its way." Davis v. United States, 131 S.Ct. 2419, 2427-28 (citations omitted).

In United States v. Leon, 468 U.S. 897 (1984), the Supreme Court considered the following: "whether the Fourth Amendment exclusionary rule should be modified so as not to bar the use in the prosecution's case-in-chief of evidence obtained by officers acting unreasonable reliance on a search warrant issued by a neutral and detached magistrate but ultimately found not to be supported by probable cause." After considering that issue the court ultimately ruled that, "suppression is appropriate only if the officers were dishonest or reckless in preparing their

affidavit or could not have harbored an objectively reasonable believe in the existence of probable cause." Id. at 926. The defendant here has failed to establish there was any bad faith in the presentation or execution of the search warrant.

The affidavit in support of the search warrant described the image, specifically Cybertip # 759801, by indicating the image was entitled "12yo preparing to enter.jpg" and went on to describe that the image depicted an apparent pre-pubescent male with an erect penis that was touching the anus of another child of unknown gender, which left no doubt that the image depicted child pornography. Further, the affidavit also stated that the Cybertip contained eighteen additional related Cybertips detailing more e-mails with images of child sexual abuse to various e-mail addresses (see paragraph 1, page 4 of document #23-3). "Our cases have consistently recognized that unbending application of the exclusionary sanction to enforce the ideals of government rectitude would impede unacceptably the truth-finding functions of judge and jury." Leon, at p. 907.

"There is a presumption created in Leon that when an officer relies upon a warrant, the officer is acting in good faith." United States v. McKneely, 6 F.3d. 1447 (10th Cir. 1993). "In the absence of an allegation that the magistrate abandoned his

detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." United States v. Robinson, 359 F.3d 66, 70 (1st Cir. 2004). That was not the case here.

It is well established that suppression of evidence is not an appropriate remedy where an officer executes a warrant he reasonably believed to be valid. See Illinois v. Kroll, 480 U.S. 340, 349-350 (1987). The United States Supreme Court has noted that the cost of a reviewing court second guessing the execution of a search warrant is too high. See Leon, 468 U.S. 897.

Here, there was no flaw or defect in the affidavit in support of the search warrant or the issuance of the search warrant. Further, it is clear that the officers relied upon the warrant's authority when they searched the defendant's residence and seized evidence lawfully. Even if the Court finds that the warrant lacked probable cause, the good faith exception under Leon would apply in this case. Therefore, the defendant's claim should be defeated.

**E. Defendant's Statements were made post-Miranda and Should Not be Suppressed**

Contrary to the defendant's assertion, Keith's admissions

and confession to law enforcement were not the unattenuated product of the search and the evidence obtained from it. During the course of a legal search, Keith was advised of his rights pursuant to Miranda and then, while being audio-recorded, made his admissions and confession to law enforcement. The government is prepared to submit a copy of the CD containing the interview should it assist the Court.

The prosecution has the burden of establishing by a preponderance of the evidence that the defendant waived his Miranda rights, and that his statements to law enforcement were provided voluntarily. See Lego v. Twomey, 404 U.S. 477 (1972); Colorado v. Connelly, 479 U.S. 157, 168-169 (1986). However, a statement following Miranda warnings will "rare[ly] be deemed involuntary. Dickerson v. United States, 530 U.S. 428, 444 (2000). When determining involuntariness, the crucial inquiry is whether the defendant's will has been "overborne" or his capacity for self determination critically impaired." United States v. Pelton, 835 F.2d 1067, 1071-72 (4th Cir. 1987), cert. denied, 486 U.S. 1010 (1988); accord Schneckloth v. Bustamonte, 412 U.S. 218, 225 (1973). Before a finding of involuntariness is made, coercive government conduct is required. Colorado v. Connelly, Id., at 165 (even if mentally ill defendant "ordered by the voice

of God" to confess felt "coerced," the coercion was not attributable to the government).

Here, Keith signed a form that clearly and unequivocally informed him of his rights prior to and during questions. After signing this form, the defendant provided oral statements to law enforcement and the interview was audio recorded. The defendant was fully aware of his constitutional rights on September 17, 2010, and decided to proved oral statements in spite of his awareness. He should not be allowed to suppress these statements simply because he has now changed his mind.

**III. CONCLUSION**

For the foregoing reasons, the defendant's motion to suppress should be denied. The government reserves the right to file a supplemental opposition after the conclusion of any hearing on the motion to suppress.

Respectfully submitted,

CARMEN M. ORTIZ
United States Attorney

By: s/ Suzanne Sullivan
Suzanne Sullivan
Assistant U.S. Attorney

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

s/ Suzanne Sullivan
SUZANNE SULLIVAN
Assistant U.S. Attorney

June 8, 2012