UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 11-10294-GAO |
| | ) | |
| DAVID A. KEITH | ) | |

DEFENDANT'S REPLY TO GOVERNMENT'S OPPOSITION TO
MOTION TO SUPPRESS EVIDENCE

## I. THE GOVERNMENT'S ARGUMENT THAT THE NATIONAL CENTER FOR MISSING AND EXPLOITED CHILDREN ("NCMEC") IS NOT AN INSTRUMENTALITY OF LAW ENFORCEMENT IS MERITLESS.

The government argues that the overarching test for governmental action focuses exclusively on whether the nominal entity is private or public. See Government's Opposition to Motion to Suppress ("Gov't Opp.") at pp. 27-28 ("While NCMEC may partner with various law enforcement agencies to perform its function, it is not a government agency. Clearly, therefore, its actions are not limited by the Fourth Amendment to the United States Constitution.") The government's argument fails both factually and legally. The Fourth Amendment not only limits actions by government agents and entities, it protects against unreasonable searches and seizures by private individuals or entities acting as "instruments or agents" of the Government. Coolidge v. New Hampshire, 403 U.S. 443, 487 (1971). Here, there can be no realistic question that NCMEC is an agent and instrumentality of the government in collecting and investigating child pornography. Section 2258A of Title 18 mandates that

Internet Service Providers that discover evidence of child pornography must report the information to specifically to NCMEC exclusively. The statute, in turn, requires that NCMEC forward the report to such law enforcement agencies as have been designated by the Attorney General. 18 U.S.C. § 2258A(c). The statutory mandate is not permissive either as to the method of reporting by ISPs to NCMEC or as to NCMEC's obligations to its law enforcement function.

Moreover, NCMEC is a government funded, supported, and directed non-governmental organization that exists for the purpose of, inter alia, generating investigations and prosecutions of illegal pornography. As NCMEC puts it,

> NCMEC plays an important role in helping law enforcement with on-going investigations. The Case Analysis Division assesses missing children leads gathered from investigating agencies or NCMEC's Call Center. The Case Analysis Division provides direct analytical assistance to law-enforcement working on active or long-term, missing-child cases. Using NCMEC databases, external sources, and geographic information databases, this Division tracks leads, identifies patterns among cases, and helps coordinate investigations by linking cases together.

National Center for Missing and Exploited Children, 2010 Annual Report, available at http://www.missingkids.com/en_US/publications/NC171.pdf. As noted in defendant's Memorandum in Support - and apparently undisputed by the government - personnel from numerous law enforcement agencies including the FBI, ICE, United States

Marshals Service, United States Postal Inspection Service, Department of Defense, and Military Criminal Investigation Organizations actually physically work out of NCMEC headquarters. Given this factual background, when NCMEC forwards analyzed data to law enforcement it is indisputably acting as an agent and instrumentality of the government. Coolidge, supra.[1] Thus, the germane issue in this case is whether, given the statutory scheme and AOL's participation in it, AOL's acts as an instrumentality of law enforcement when it churns email content for suspected child pornography. It does, and thus violated the Fourth Amendment when it searched for and seized defendant's email content to turn over to law enforcement.

## II. THE GOVERNMENT'S OPPOSITION FAILS TO REBUT THE SUBSTANTIAL FACTUAL INDICIA THAT AOL'S PRIMARY PURPOSE IN CHURNING EMAIL CONTENT FOR SUSPECTED CHILD PORNOGRAPHY AOL WAS TO COMPLY WITH THE STATUTORY SCHEME BY SEARCHING FOR AND TURNING OVER CONTRABAND.

The government concedes that when churning email content, AOL, while ostensibly acting in a private capacity, is compelled

---

[1] Because NCMEC is an instrumentality of law enforcement, NCMEC personnel's action in opening and evaluating the image constituted a government expansion of AOL's initial search, an expansion that is itself an impermissible violation the Fourth Amendment. Walter v. United States, 447 U.S. 649, 651 (1980). See Defendant's Memorandum in Support of Motion to Suppress at pp. 25-28. As argued there (and unaddressed by the government in its opposition), NCMEC's expansion provides a separate and independent ground for suppression. United States v. Silva, 502 F. Supp. 2d 143, 147 (D. Mass. 2007), affirmed, 554 F.3d 13, 18-19 (1st Cir. 2009)(initial private searches morphed into government agent search where private party directed by police to expand the search).

to report any suspected child pornography to the government through NCMEC. See Gov't Opp. at p. 21.[2] The sole issue, then, is whether the statutory scheme compels the churning itself to an extent that the churning is done in conjunction with government action. United States v. D'Andrea, 648 F.3d 1, 10 (1st Cir. 2011); Skinner v. Railway Labor Executives Assn., 489 U.S. 602, 615-16 (1989). It does.

The government's argument, as buttressed by its recently filed Affidavit of AOL, see Docket Entry #28 (D.E. 28), relies almost exclusively on its claim that AOL's policy of churning of email was not instituted because of the pressure of the statutory scheme; instead, according to the government and AOL, it was designed to avoid, inter alia, civil liability. Gov't Opp. at pp. 21-22; D.E. 28 at ¶8. In so doing, according to the government, AOL was "serving its own interests" rather than the government's. Id.

But that AOL acted avoid civil liability (and public opprobrium that would follow violation of an act of Congress) is

---

[2]The government goes on to write, "No government agent instructed AOL to report the child pornography," and later, "AOL" was not pressured to report the child pornography images at issue in this case; it did so of its own violation [sic]. Gov't Opp. At 21. Of course, no government agent need do so; the reporting is a congressionally directed imperative. Whether or not an agent directs, AOL would be in violation of the statute and subject to its penalties for doing so. It follows that AOL is necessarily "pressured" to report child pornography to the same extent any entity or person is "pressured:" it is required to follow the law.

precisely the point; the statutory scheme, which includes the potential for civil liability, constitutes the kind of coercion, domination, or direction that crosses that turns a private actor into a law-enforcement agent or instrumentality. United States v, Momoh, 427 F.3d 137, 141 (1st Cir. 2005)(instigation of a search, which includes “affirmative encouragement,” “coercing,” “dominating,” or “directing” an individual or entity, constitute evidence of governmental involvement sufficient to implicate Fourth Amendment protection). That coercion, and the unitary law-enforcement endeavor to search it has engendered, implicates the Fourth Amendment. Skinner, 489 U.S. at 614-15.

Even assuming, arguendo, that AOL may have had other reasons for churning email for content,[3] that naked fact alone is insufficient to insulate AOL’s practice from Fourth Amendment scrutiny. A private party acts as law enforcement agent subject to Fourth Amendment limitations where the primary reason to conduct a particular search is to fulfill a law enforcement purpose. United States v. Silva, 502 F. Supp. 2d 143, 147 (D. Mass. 2007), affirmed, 554 F.3d 13, 18-19 (1st Cir. 2009)(fruits

---

[3]The Affidavit of AOL makes the claim that AOL’s development of scanning tools was motivated by it amorphous desire “to identify threats to AOL’s network, whether reputational or otherwise.” D.E. 28 at ¶8. At the same time, it concedes that it developed and modified the tools to identify and report “lawbreakers and to prevent the network from being used to carry or store contraband, such as child pornography,” quintessentially a law enforcement purpose. Id. at ¶7.

of search subject to exclusion where goal of executing search, rather than promoting own interests, becomes primary motivating factor). Notwithstanding its suggestion that its search through email content promotes amorphous business goals, AOL's immersion in NCMEC's law enforcement mission leaves no doubt that the primary purpose behind AOL's email churning is to aid law enforcement as is consistent with the statute and regulatory scheme. See Defendant's Memorandum in Support of Motion to Suppress at pp. 20-21 (noting the dual role of AOL employee John D. Ryan as AOL Legal Counsel spearheading AOL's Criminal Investigations arm and Chairman of the Board of Directors of NCMEC).

Judge Saris's decision in Silva is illustrative of the role of motivation in private versus government-sponsored searches, and compels the conclusion that AOL's actions in churning email is subject to Fourth Amendment limitations. In Silva, the defendant challenged three searches of his bedroom by his brother Norman, who recovered documents that Norman then provided to police. Silva, 502 F. Supp. 2d at 145-46. After the first search, Norman went to police concerned about documents he had seen in the defendant's bedroom suggesting the defendant had been using Norman's identity. Id. at 145. The police told Norman there was nothing to be done without seeing the documents themselves, spurring Norman to go back to conduct a second search

and retrieve some of the documents. Id. When he returned with the documents, the police officer told Norman to get additional documents to aid the officer in securing a search warrant. Id. at 146. Norman obtained the missing documents and provided them to the police. Id.

Judge Saris ruled that the primary motivation of the first two searches were to serve the brother’s own interests in retrieving the documents to clear his own name; that personal motivation in conjunction with any lack of control by the police rendered the first two searches private and thus not subject to the Fourth Amendment. Id. at 147. The third search, however, was markedly different because police pressed Norman to retrieve the other documents that were not necessarily related to his own interests in protecting his identity. The foreseeable result of the police officer’s pressure was that Norman would execute a search prohibited by the Fourth Amendment by entering the defendant’s bedroom. Id. at 147-48. Thus, suppression was warranted even though the police officer did not actively participate, control, or direct the search in any way. Id. On appeal to the First Circuit, the government conceded that the police direction and pressure made Norman a de jure agent of the government, and the Court of Appeals affirmed. Silva, 554 F.3d at 19 n.6.

Read with the background of the congressionally enacted

scheme, AOL's churning of email for content is analogous to the third search ruled illegal by Judge Saris, conceded to be illegal by the government on appeal, and affirmed as illegal by the First Circuit. Just as Norman's primary aim changed to a law enforcement motive pursuant to the direction of the police officer in the final search of Silva's bedroom, AOL's primary purpose in churning email was to search for, seize, and turn over contraband to law enforcement pursuant to the statutory imperative. Silva, 554 F.3d at 18-19. The irresistible disincentives set forth statutory scheme inevitably instigated AOL's policy of churning of email, and the clear intent of Congress in setting forth the statutory scheme was to coerce ISPs like AOL to do so. That AOL did so to protect its business follows not from a commercial motivation but from its desire to comply with the statutory scheme. Thus, the Silva factors, when properly considered and balanced, compel the conclusion that AOL's churning of email content generally, and its seizure of defendant's email in this case specifically, is a governmental search subject to Fourth Amendment limitations. Id.

In sum, AOL's protestation that it churns email for amorphous business reasons, see D.E. 28, is of little moment when weighed against the overwhelming indicia that its primary aim is to comply with the statutory scheme, a scheme that is dedicated to law enforcement. Because AOL's actions in culling email is

intertwined with government law-enforcement affiliated NCMEC's own efforts, the government is an active participant in AOL's search and seizure of email content and thus the search of defendant's email is subject to Fourth Amendment protections. Skinner, 489 U.S. at 615-16.

**III. STALENESS RESULTING IN A LACK OF NEXUS TO 1 MARSHFIELD ST.**

The government in its opposition goes on at some length to cite cases for the proposition that a seizure of a computer may be supported by evidence of downloading of child pornography in the past. Gov't Opp. at pp. 29-33. This is so, according to the government, because of the oft-repeated asseveration that child pornography collectors keep and maintain their collections for long periods of time. Gov't Opp. at pp. 34-35. And indeed, law enforcement agents may have had a persuasive affidavit for search of the already seized Toshiba laptop. See id. at 33-34 & n.16.

The government's argument, however, misses the point entirely. The Toshiba, which was suspected to contain child pornography, was out of commission and in the hands of law enforcement officials no later than July 29, 2010, six weeks before the application. There is absolutely no information in the affidavit of additional cybertips or any other suspicious activity after that date, and no indication whatsoever that the defendant had ever replaced or attempted to replace the Toshiba laptop, let alone that the replacement would contain child

pornography.

As the government must concede, the search warrant at issue specified the seizure of computer and other digital media containing child pornography from 1 Marshland Street on September 17, and did not specify a general search of the premises for child pornography. Where law enforcement was already in possession of defendant's computer - the medium identified in the affidavit as the storage location likely to contain child pornography - the propensity of child pornography collectors to maintain collections became irrelevant to whether a different computer containing child pornography existed and would be at 1 Marshland Street six weeks later.

Given this factually undisputed background, the existence of the purported objects of the search warrant at 1 Marshfield Street on September 17, 2010 was nothing more than pure speculation. While there may have been a nexus between suspected evidence of criminal activity and 1 Marshland Street in April 2010 when there was demonstrably a digital device sending suspected contraband at that location, by September 2010 that nexus was gone. The information supporting a nexus finding completely evaporated once law enforcement had seized the Toshiba laptop and had no further information about suspicious activity or even the presence of a computer in the home. Zurcher v. Stanford Daily, 436 U.S. 547, 556 (1978)("The critical element in

a reasonable search is not that the owner of the property is suspected of a crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought."). The paucity of information supporting the existence of a computer or other digital device at 1 Marshland St. on September 17, 2010 renders the search warrant invalid and the fruits of it must be suppressed.[4]

**CONCLUSION**

For the foregoing reasons, as well as those set forth in defendant’s Memorandum in Support of Motion to Suppress, the defendant respectfully moves that this Court suppress from evidence at trial items illegally observed or seized on September 17, 2010 from 1 Marshland St., Haverhill, as a result of the search warrant as well as statements made by him contemporaneous with the search and his arrest.

DAVID KEITH
By his attorney,

/s/ Timothy G. Watkins
Timothy G. Watkins

---

[4]The government additionally argues that (1) even if the search warrant affidavit was flawed the search was saved by Leon, and (2) defendant’s statements once he was arrested at the scene for possession of the seized items were somehow independent of the search. Defendant has addressed these issues in his Memorandum in Support and relies on the arguments made there.

Federal Defender Office
51 Sleeper St. 5th Floor
Boston, MA 02210
Tel: 617-223-8061

CERTIFICATE OF SERVICE

I, Timothy G. Watkins, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on June 20, 2012.

/s/ Timothy G. Watkins
Timothy G. Watkins