UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| | ) | Criminal Action |
| v. | ) | No. 11-10294-GAO |
| DAVID A. KEITH, | ) | |
| Defendant. | ) | |

BEFORE THE HONORABLE GEORGE A. O'TOOLE, JR.
UNITED STATES DISTRICT JUDGE

**MOTION HEARING**

John J. Moakley United States Courthouse
Courtroom No. 9
One Courthouse Way
Boston, Massachusetts 02210
Monday, May 12, 2014
3:08 p.m.

Marcia G. Patrisso, RMR, CRR
Official Court Reporter
John J. Moakley U.S. Courthouse
One Courthouse Way, Room 3510
Boston, Massachusetts 02210
(617) 737-8728

Mechanical Steno - Computer-Aided Transcript

APPEARANCES:

OFFICE OF THE UNITED STATES ATTORNEY
By: Suzanne Sullivan, Assistant U.S. Attorney
John Joseph Moakley Federal Courthouse
Suite 9200
Boston, Massachusetts 02210
On Behalf of the Government

FEDERAL DEFENDER'S OFFICE
By: Timothy G. Watkins, Esq.
51 Sleeper Street
Fifth Floor
Boston, Massachusetts 02210
On Behalf of the Defendant

P R O C E E D I N G S

THE CLERK: All rise.

(The Court enters the courtroom at 3:08 p.m.)

THE CLERK: The United States District Court for the District of Massachusetts. Court is in session. Be seated.

For a motion hearing in the case of United States versus David Keith, 11-10294. Would counsel identify yourselves for the record.

MS. SULLIVAN: Good afternoon, your Honor. Suzanne Sullivan on behalf of the United States.

MR. WATKINS: Good afternoon, your Honor. Tim Watkins, Federal Defender's Office, on behalf of David Keith.

THE COURT: All right. We have Mr. Keith with us by video.

MR. WATKINS: That's correct. Due to the good graces of Mr. Lyness.

THE COURT: Okay. We have your second motion to suppress. Go ahead.

MR. WATKINS: I think the argument's laid out pretty straightforwardly in the papers. The Haverhill police, along with state police, executed a search on September 17th. They left at the end of the day with one computer. On September 20th they came back and seized another computer by way of consent.

My argument is, I think it's well supported in the

case law, is that that second entry back into the home on September 20th was not part of the original search on September 10th -- on September 17th, but rather, a separate search, and that is evidenced by the fact that law enforcement received consent to go in rather than --

THE COURT: Is there any dispute about the facts, what happened on that Monday? Is there any issue that needs to be tried on evidence?

MR. WATKINS: No. As to that point, I think that's undisputed, that they came back on the 20th. That was all that they took. They had Mr. Keith's grandmother sign a consent to seize the computer and they took the computer. So far as I know, that is really undisputed.

The question is what happens next, whether the -- law enforcement can, as they did here, forensically search that computer once they've gained it by consent.

THE COURT: So again, just so I'm sure that I'm following, you're not challenging the seizure; you're challenging the subsequent forensic search of the computer. Is that correct?

MR. WATKINS: That's correct. The consent appears to be valid. It was from Mrs. Keith. She had ownership over the property. But, of course, there are two steps in any search of a computer, and that is, one, getting the computer lawfully into the hands of law enforcement. That seems to have happened

here. There's no question at least there -- setting aside my previous probable cause challenge, there's no question but that the law enforcement validly had the computer itself; it's whether they can take that second step of searching the computer once they have it physically in their presence.

And I think the cases are quite clear that they cannot. *Clutter* is the leading case on that. It's very similar facts to what we have here. In *Clutter*, the law enforcement agents did it the right way. Even though they got consent to actually have the computer in their custody, they obtained a second search warrant to do the forensic search of the computer. That didn't happen here. And their failure, the law enforcement failure, to get a search warrant to search that Hewlett-Packard, made it a Fourth Amendment violation when they did go and start to rummage around.

So as I say, I think the issue is pretty clear. I think the law is firmly on Mr. Keith's side on both parts. It is not a continuation of the search. There are rare and narrow exceptions where a court will consider a subsequent entry as a continuation of the original search. That's really not here in any of the particulars.

Indeed, when they left on September 17th, as the search warrant return seems to -- not seems to -- does document, the search was through. That was when they identified the search as having taken place. There's no

indication that the search continued over on September 20th or that there was some kind a need on September 17th to continue the search over to September 20th; it was simply that they decided to go back and get more evidence.

Similarly, the government's other argument that the consent that Mrs. Keith gave on September 20th was enough to go in and search the computer, I think that's clearly wrong under *Clutter*. There's no indication that this computer -- the contents of this computer -- belonged to Mrs. Keith or that she had any consent, or even that they asked for any consent to search the computer. The consent form was strictly limited to being able to seize the computer from the residence. That's what the law enforcement agents did. It's the subsequent search that they did not have consent to do, and that is why it was a warrantless intrusion into Mr. Keith's Fourth Amendment rights and the evidence needs to be suppressed.

THE COURT: Why wouldn't that argument apply to a computer seized on the 17th?

MR. WATKINS: On the 17th the search warrant specifically said: We're going to search the residence for a number of things including a computer, and that's what they did.

THE COURT: Right. And my point is: That gets them the body of the computer pursuant to it. Doesn't it also get them permission to go inside and look at it?

MR. WATKINS: It did because it specifically said that in the search warrant. It is true if they had picked up the Hewlett-Packard at that time, at that September 17th search, I do believe that they could have, under that warrant, searched the computer on that day. It's the fact that it was a second entry after the search had occurred.

Essentially, the search warrant had -- I don't want to say "expired" because it doesn't really expire, but the search had been completed. Everything that was to be obtained under the search, everything to be seized, had been seized on September 17th. They go back on September 20th, anything that happens that day is outside of the warrant, and that's why they needed to go back and get the magistrate's approval to go ahead and search the Hewlett-Packard once they found it on September 20th.

THE COURT: Okay. Thank you. Ms. Sullivan?

MS. SULLIVAN: Your Honor, by its very face the consent form is not a consent to simply search or simply seize; it's a consent to search and seize. So I disagree with the defense when he indicates that this was simply a consent that was signed by Mrs. Sharon Keith to just give them the computer. That flies in the face of common sense and it flies in the face of the actual waiver that she signed in two different places that was witnessed by the two law enforcement agents that returned to the home.

Secondly, Mr. Watkins just answered the Court's question about the search warrant itself. And I disagree with him that the search warrant lists a request for a computer. If you look at the search warrant, it's a request for computer systems, plural, computer hardware, computer software, in addition to other information that's described in the attached addendum, which I would suggest to the Court is very specific.

I disagree with the defense on both arguments. One, I say that the -- first of all, the defendant, I would suggest to the Court, would have to show an expectation of privacy before we even get to the consent. And I would suggest the defendant has failed to do so. If the Court disagrees with the government's assertion and argument on that point, then I would respectfully inform -- indicate to the Court that the consent form that was signed by Sharon Keith would carry the day. I'd suggest she had both apparent and actual authority. This is a computer that was owned by her husband. Her husband proactively contacted law enforcement after they left the residence on September 17, 2020 *[sic]*.

So regardless of the defense's assertion that they simply went back on the 20th to gather more evidence, they didn't go back on a fishing expedition. They returned to the home after the call was made by this defendant's grandfather. The defendant, David Keith, resided at that Marshland Street address with his grandmother, his grandfather and a minor

relative.

When the law enforcement left the residence on the 17th, which was a Friday -- and that's important, I would suggest to the Court, because we're talking about weekdays versus an intervening weekend. When law enforcement left the residence on Friday, September 17th, 2010, at some point later that evening there was a call that was made proactively and voluntarily by the defendant's grandfather, Douglas Keith, who informed the Haverhill Police Department that there was an additional computer at that residence.

As a result of that information, the following Monday, which was the first day that Detective Moses from the Haverhill Police Department was returning to work, he and the state trooper, Mike Murphy, who was the affiant of the state search warrant in this case, returned to the residence. They went there for a limited purpose. They went there for a narrow reason and the scope was extremely defined. They went to retrieve the one item that Mr. Keith, the defendant's grandfather, contacted the police about that was in that residence located in a common hallway, an item that was owned by him, Douglas Keith.

And when they went there, I would suggest to the Court they didn't even need to get the consent of either Mr. Douglas Keith or Mrs. Sharon Keith, but they did. And that would be an alternative basis for which they would be able to search and --

to seize and search that HP computer.

When they got there, Mrs. Keith was the individual that was at the Marshland Street residence. And they didn't force her, they didn't demand that she sign a consent form. She voluntarily signed this form in the presence of Trooper Murphy and Detective Moses. And then they took that one item, the HP Pavilion computer. So I would suggest to the Court that the consent would carry the day in this case and that there would have been no intrusion on the defendant's Fourth Amendment violation.

Should the Court not deem that the consent was valid, then the government would also make the second argument that I've made, and I would suggest to the Court similar to what Mr. Watkins has argued. I believe the government's substantive arguments are laid out in its opposition to the defendant's motion to suppress.

But I would say to the Court that there's clearly no Fourth Amendment violation here. This is not a question of whether there were two entries pursuant to the search warrant, but rather, whether the second search was a continuation of the first.

We would suggest to the Court that the state trooper in this case, Trooper Murphy, had a valid warrant to begin with to go into that Marshland Street address on the 17th of September 2010, which was the same day that he obtained that

search warrant.

I would suggest to the Court that we also have information that when they went to that home, this was close in time and similar in nature. The reason for going back to that home was for the very purpose of the initial search, which was for the computers. It wasn't for other evidence that was unrelated to the child pornography investigation; it was limited. It was not a complete second search, which I would suggest to the Court is distinguishing from the -- and I may mispronounce it, and I apologize, your Honor, *United States versus Keszthelyi*, the 308 F.3d 557 Sixth Circuit 2002 case.

I would suggest that Keith is distinguished because of the fact that Keith did not have two complete separate searches of that residence over a multiple-day period. And in Keith, at the time of the second entry of the second search, the officers possessed a reasonable basis and a reasonable belief that undiscovered evidence remained at that home. And that's important in this case, your Honor, because clearly based on the information that was voluntarily provided by the defendant's own grandparents, the police knew that there was more undiscovered evidence at that residence.

I'd also suggest to the Court that the validity of the warrant is important and crucial here. The search warrant was still valid, was still in effect when the police returned on Monday, September 20th. It had not yet been returned and it

was no longer -- it was not out of time or date.

I would also suggest to the Court that the officers and the troopers took steps to limit their scope or intrusiveness when they returned to the Keith residence. One, that it was limited; two, that it was not a complete second search, as I've pointed out; three, that the search was carried out for a narrowly defined purpose; four, that the item taken was covered by the warrant and also referenced in the warrant by the phrase "computer systems, computer hardware, computer software"; and, five, that the authority of the search warrant itself had not expired.

For the reasons that the government has stated in its opposition and for the argument that I've made, I respectfully suggest to the Court that there was no Fourth Amendment violation, and I would ask the Court to deny the defendant's motion to suppress.

THE COURT: Okay. Mr. Watkins?

MR. WATKINS: Just briefly, your Honor, as to the reasonable expectation of privacy, in my reply, Exhibit D, I attached a report that the Haverhill police who talked about it being "a suspect's computer." I didn't actually think that there would be any kind of disagreement about this. I suppose if the government insists that that is a lie-back, that may be something that we need to have a hearing on, although I think the police report speaks volumes about whose computer it

actually was.

The reason, I would proffer, that they wrote that in the report is because they had time to extensively interview Mr. Keith, Douglas Keith, who is Mr. Keith's grandfather, and Sharon Keith, who is Mrs. -- Mr. Keith's grandmother, neither of whom at the time knew how to use a computer. He was the only person in the house that was using a computer. And indeed, the searching agents would have known that from September 17th.

So I think to the extent that there's a question about expectation of privacy, I think we've met any burden that we need to. If the Court really wanted to hear and have the officer say that they talked with the Keiths and have the Keiths say exactly what I've told the Court, I suppose we could, but I actually don't think that that's a live issue.

As to Ms. Sullivan's talk about the agents had a reasonable belief to come back and seize another computer and that it might be connected to the investigation, of course that's true, and it's likely true all the time someone comes into a home to search, whether it's by consent or otherwise. The point is what they didn't have was a warrant to look into the computer. It was not covered by the first search where the warrant -- where they did have a warrant to search the computer.

So whatever the agents thought is really irrelevant

here. What they needed to do was to get the warrant to search that second computer once they had seized it on September 20th. It wasn't covered by the warrant because that had been concluded the previous Friday.

For those reasons, your Honor, I'd ask the Court to allow the motion to suppress.

I would just note, I noted in the papers and just I'll reiterate, it's not dispositive. At this point the computer that was seized on September 20th did have indicia of child pornography, and indeed I believe agents would testify that it did have. So Mr. Keith is clearly liable for possession of child pornography.

The only evidence of distribution would come from this computer that was seized on the 20th. It does make a difference as far as a mandatory minimum and it does make a difference as far as the Guidelines that would apply. But I did want to give the Court -- because we are close to trial now that this is certainly not dispositive by any means.

THE COURT: Right. Okay. I'll take the matter under advisement and resolve it. But as Mr. Watkins has just noted, we do have a trial date a couple of weeks out. This had originally been scheduled for this coming Thursday as a final pretrial. I guess we can do one of two things. We can talk about the trial now or I can decide this before Thursday and we can have the pretrial on Thursday. I don't know which you

would prefer.

MS. SULLIVAN: I prefer to do it now so that we can try to get a bit of -- some guidance, perhaps, from the Court because the government is undertaking its preparation for the trial.

MR. WATKINS: Perhaps I can suggest Option C, which is that Mr. Keith could be brought in here, certainly to plead to the possession of child pornography count, which there would be no dispute on regardless of whether the Court allowed the motion. That would have the salient advantage of keeping Ms. Sullivan from having to prepare for trial and having the Court set aside that week. And then depending on the Court's decision on this motion, he can come and plead to the other two counts or the government can decide what to do at that point.

I throw that out there again just -- in my view in speaking with Mr. Keith, this is not a case that would go to trial, and the only thing really remaining here is the Court's decision as to whether -- how much of the evidence comes in at trial and sentencing.

THE COURT: Okay. I understand the concept. I'm not sure what the operational suggestion is. Do you want him brought in this Thursday?

MR. WATKINS: If the --

THE COURT: Can we do that, by the way? Is that enough -- they have enough notice for that, right?

THE CLERK: Yeah.

THE COURT: Or it could be next -- let me just look. It's scheduled for the 27th, I believe, right, which is about two weeks.

MS. SULLIVAN: Correct. Two weeks from tomorrow.

MR. WATKINS: Certainly if the Court thought it was going to have a decision by next Monday, that makes sense. Or alternatively, Mr. Keith could come in and plead guilty to that single count on that day, or if the Court were willing, we could postpone trial at this point while the Court decides --

THE COURT: No, I expect the decision will be soon.

MS. SULLIVAN: Your Honor, just --

THE COURT: I don't think we need to do that.

MS. SULLIVAN: Just for some clarification, and I'm not trying to muddy the waters in any way, but the government did send out its 21-day letter last week in compliance with the rules. And I would just ask for some clarification. In the event that the Court denies the defendant's motion to suppress, is Mr. Watkins saying that Mr. Keith is coming in here to plead to all three of the charges in the indictment?

The reason I ask that is I know he's talking about a plea to the possession. The government still has to prepare for trial, and we have already undertaken that process. This is now the second time.

So I'd just like some clarification so that I know

where I'm going. I don't want to waste my time on a case that is ultimately going to be resolved regardless of the Court's outcome. If he says it's going to be a plea, then I'm going to take him at his word that it's going to be a plea regardless of whether this is an allowance or a denial on the one charge, two charges, three charges.

And that's where I am at right now. Because I don't want to wait until next Monday, to be honest with your Honor. That's eight days before trial.

THE COURT: Mr. Watkins?

MR. WATKINS: Yes, it will be a plea.

THE COURT: So no trial? In other words, this issue has consequences for sentencing only?

MR. WATKINS: That's correct, your Honor. I would just note that I would try to save our appellate rights on that as far as a conditional plea. But barring -- assuming the government -- I guess we haven't got to that level of discussion, whether the government would accept a conditional plea at that point. If they would not accept a conditional plea, then we would have to have a trial. But again, it's my thought that it's very unlikely to go to trial.

MS. SULLIVAN: I'm not going to be in a position to say -- this is the first that this has been brought up. I'm not going to stand here and say that I'm going to agree to that, your Honor, so I just want to make sure that the record

is clear. And I also indicated in the 21-day letter last week that the government would oppose a third point reduction for acceptance upon a plea at this late time.

THE COURT: I think we could put it on for Thursday -- back on.

MS. SULLIVAN: Okay.

THE COURT: It will be for at least one plea, I guess.

MS. SULLIVAN: So I guess the answer at this point, your Honor, then, would be it's not definitive that it's going to be a plea. In the event the Court denies the defendant's motion to suppress on all three counts, then we may be going to trial in two weeks.

THE COURT: That's not the way I'm hearing it, but we'll know by Thursday anyway.

MS. SULLIVAN: Okay.

THE CLERK: So we'll set up a Rule 11 hearing at two o'clock on Thursday, May 15, 2014.

MS. SULLIVAN: Thank you.

THE COURT: Okay?

MR. WATKINS: Thank you, your Honor.

THE COURT: All right.

THE CLERK: All rise.

THE COURT: I'd like to see Mr. Watkins at the side briefly on another matter.

THE CLERK: The Court will be in recess.

MS. SULLIVAN: Thank you, your Honor.

(The proceedings adjourned at 3:30 p.m.)

C E R T I F I C A T E

I, Marcia G. Patrisso, RMR, CRR, Official Reporter of the United States District Court, do hereby certify that the foregoing transcript constitutes, to the best of my skill and ability, a true and accurate transcription of my stenotype notes taken in the matter of Criminal Action No. 11-10294-GAO, United States of America v. David A. Keith.

/s/ Marcia G. Patrisso
MARCIA G. PATRISSO, RMR, CRR
Official Court Reporter

Date: 9/29/14